UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN TESFAYE,<br><br>Defendant. | Civil Action No.:<br><br>Jury Trial Demanded |

## **COMPLAINT**

Plaintiff United States Securities and Exchange Commission ("SEC") alleges as follows against Defendant Benjamin Tesfaye ("Tesfaye" or "Defendant"):

## **SUMMARY OF THE ACTION**

1.     Tesfaye engaged in illegal insider trading in Calliditas Therapeutics AB ("Calliditas") securities in advance of an announcement that Asahi Kasei Corp. ("Asahi Kasei") was acquiring Calliditas via a tender offer (the "Acquisition"). Specifically, Tesfaye unlawfully traded Calliditas stock options based on material, nonpublic information about the Acquisition that he misappropriated from his then-romantic partner, who worked at a subsidiary of Asahi Kasei. Tesfaye traded the Calliditas stock options prior to the May 28, 2024 announcement of the Acquisition on the basis of the information he misappropriated, and as a result made illegal profits of $18,668.

2.     By engaging in the conduct alleged in this Complaint, Tesfaye violated, and unless enjoined will continue to violate, Sections 10(b) and 14(e) of the Securities Exchange

1

Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5 and 240.14e-3].

3. The SEC seeks a final judgment: (a) permanently enjoining Tesfaye from violating the federal securities laws and rules alleged in this Complaint; (b) ordering Tesfaye to disgorge any ill-gotten gains he received as a result of insider trading, with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and (d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Tesfaye to pay civil money penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and (d) ordering any other and further relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

4. The SEC brings this action pursuant to the authority conferred upon it by Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78u-1].

5. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

6. Tesfaye, directly and indirectly, has made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Tesfaye resides within this District. In addition, many of the acts, practices, and courses of business constituting the violations alleged herein occurred within this District, including Tesfaye misappropriating the material, nonpublic information from his romantic partner and executing the trades in his and Family Member B's brokerage accounts.

**DEFENDANT**

8.     **Benjamin Tesfaye**, age 41, resides in Irving, Texas. At the time of his illegal Calliditas stock and option trades, Tesfaye was unemployed.

**RELEVANT ENTITIES**

9.     **Calliditas Therapeutics AB**, was, prior to the Acquisition, a Swedish corporation with its principal place of business in Stockholm. Calliditas was a differentiated specialty pharmaceutical company focused on treating unmet medical needs. Calliditas's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)]. American Depositary Shares ("ADSs") in Calliditas, as evidenced by American Depositary Receipts (ADRs), representing two shares of its common stock, were registered under the Securities Act of 1933 ("Securities Act"). Its ADRs traded on the NASDAQ Global Select Market under the symbol "CALT."

10.     **Asahi Kasei Corp.** is a Japanese corporation with its principal place of business in Tokyo. Asahi Kasei is a multinational chemical company. Asahi Kasei announced its acquisition of Calliditas on May 28, 2024 and completed the acquisition on September 13, 2024. ADSs in Asahi Kasei, as evidenced by ADRs, each representing two shares of Asahi Kasei's common stock, were registered under the Securities Act. Asahi Kasei's ADRs were unsponsored and exempt from registration under Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)] pursuant to Rule 12g3-2(d) [17 C.F.R. § 240.12g3-2(d)]. The ADRs trade Over The Counter under the symbol "AHKSF."

11.     **Subsidiary A** is a Delaware corporation with its principal place of business in Cary, North Carolina. Subsidiary A is a wholly owned subsidiary of Asahi Kasei.

**TRADING TERMINOLOGY**

12.     Stock is a form of equity ownership in a corporation and it is a security as

defined by Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)].

13.     An American Depositor Share ("ADS") is a security, evidenced by an American Depository Receipt ("ADR"), that represents an ownership interest in a specified number of securities, generally equity securities, of a foreign issuer that have been deposited with a depositary. ADRs are a common vehicle for trading foreign securities in the US, allowing them to be listed on US exchanges.

14.     Options contracts are financial instruments that offer the buyer an opportunity to buy or sell – depending upon the type of options contract – an underlying asset such as stock. An options contract on a security, such as stock or ADS, is also a security under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)].

15.     A call stock option is a specific type of options contract that gives the owner the right, but not the obligation, to buy 100 shares of the underlying security at a set price per share on or before a set future date. Buying a call option becomes profitable if the security price rises above the strike price prior to the expiration date.

16.     A call option is considered "out-of-the-money" when its strike price is higher than the current market price of the underlying security.

## FACTS

### A.     Background

17.     At all times relevant to this action, Tesfaye's then-romantic partner (his "Partner") worked at Subsidiary A as a Senior Director of Ethics and Compliance. In that role, she was responsible for, among other things, assessing Calliditas's compliance program in connection with Asahi Kasei's acquisition of Calliditas.

18.     At all times relevant to this action, Tesfaye and his Partner shared confidences with one another, including information that could affect their professional

standing or careers. Tesfaye, Family Member A, and his Partner have all worked in the healthcare field and frequently discussed their experiences with companies in that industry.

19.    At all times relevant to this action, Tesfaye exercised control over and traded securities within his and Family Member B's brokerage accounts.

**B.    Tesfaye's Partner Learns that Calliditas Will Likely Be Acquired**

20.    On April 11, 2024, Calliditas and Subsidiary A entered into confidentiality agreements to exchange information relating to the Acquisition. On April 22, 2024, representatives of Asahi Kasei and Calliditas met to negotiate concerning the potential acquisition transaction. On April 24, 2024, the Asahi Kasei Board of Directors discussed plans to acquire Calliditas. On May 10, 2024, Asahi Kasei submitted an offer to acquire Calliditas. On May 21, 2024, the Calliditas board of directors determined that Asahi Kasei's offer was compelling and agreed that Calliditas should progress towards consummating the transaction with Asahi Kasei. These were substantial steps toward Asahi Kasei making a tender offer for Calliditas shares.

21.    On or about April 24, 2024, Tesfaye's Partner learned from her supervisor that Subsidiary A was conducting due diligence on Calliditas in support of Asahi Kasei's acquisition of the company.

**C.    Tesfaye Misappropriated Material, Nonpublic Information From His Partner**

22.    On May 22, 2024, Tesfaye's Partner was working in Subsidiary A's office in Cary, North Carolina, when Subsidiary A and Asahi Kasei completed their due diligence of Calliditas. Tesfaye's Partner sent him a text message that there were "some very big things happening here" and promised to call him on her way to the airport.

23.    Later that afternoon in a telephone conversation, she told Tesfaye in

5

confidence that Asahi Kasei would be acquiring another company and that she was excited about what the acquisition might mean for her role and responsibilities. She also told him that Family Member A would be familiar with the acquisition target company because Family Member A had recently interviewed for a position at that company. While still on the call with his Partner, Tesfaye sent a text message to Family Member A asking for the identity of the companies Family Member A had interviewed with. Family Member A's response identified four companies including Calliditas.

24.     Tesfaye understood that, of the four companies Family Member A identified, only Calliditas was both publicly traded and a viable acquisition target for Asahi Kasei and Subsidiary A given its portfolio in the biopharmaceutical industry.

25.     Tesfaye knew or was reckless in not knowing that the information his Partner told him about the potential Acquisition was material, nonpublic information that she had learned as part of her job at Subsidiary A.

26.     Tesfaye owed a duty of trust or confidence to his Partner because they lived together, had been in a committed relationship for several years and routinely shared confidences relevant to their careers. Tesafye also knew, based on their prior conversations and his education and knowledge of the pharmaceutical industry, that his Partner handled sensitive corporate secrets. For example, they had made arrangements to occupy separate workspaces when teleworking because, as he was aware, she expected him to maintain the confidentiality of corporate information she shared with him, and it was very important to her that the trade secrets and confidential information of her employer be protected.

27.     Tesfaye also knew or was reckless in not knowing that his Partner conveyed the information about Asahi Kasei's planned acquisition in the context of their relationship

of trust and confidence, particularly as it related to her career prospects which could positively impact them both and expected him to keep information about the Acquisition confidential.

**D.** **Tesfaye Trades On The Basis of the Material, Nonpublic Information He Misappropriated From His Partner**

28. Instead of keeping the information confidential, Tesfaye traded Calliditas ADRs and options contracts on the basis of the material, nonpublic information he misappropriated from his Partner.

29. On Thursday, May 23, 2024, Tesfaye purchased 6.527415 Calliditas ADRs in his personal brokerage account, and purchased 400 Calliditas ADRs and 13 out-of-the-money Calliditas call options in a brokerage account belonging to Family Member B over which he had trading authority.

30. Before the markets opened on Tuesday May 28, 2024, the second trading day following Tesfaye's transactions, Asahi Kasei announced that it would be acquiring Calliditas through a voluntary tender offer. When the markets opened following the announcement, Calliditas's ADR price rose nearly 70%, from $22.42 (Calliditas's closing price the day before the announcement), to $37.95 (the closing price on the day of the announcement).

31. The same day, Tesfaye liquidated the Calliditas ADR and call options in his and Family Member B's brokerage accounts, realizing a combined profit on the trades of $18,668.

32. At the time of his trading described above, Tesfaye owed a duty of trust and confidence to his Partner, based on their relationship, which included a history, pattern, and practice of maintaining and respecting confidences.

33. Tesfaye obtained material, nonpublic information about the potential Acquisition from his Partner, who learned about it from her employment.

34.    A reasonable investor would have viewed the information about the potential Acquisition, learned from a Subsidiary A employee, as being important to the decision of whether to invest in Calliditas securities.

35.    Tesfaye knew or was reckless in not knowing that the information he obtained from his Partner about the Acquisition was material, nonpublic information and that he owed a duty of trust and confidence to her not to trade Calliditas securities on the basis of that information. Tesfaye used the information he misappropriated from his Partner when purchasing Calliditas securities, and it was a substantial factor in his decision to purchase Calliditas securities.

36.    By trading Calliditas ADRs and stock options based on information related to the potential Acquisition, Tesfaye misappropriated material, nonpublic information for securities trading purposes, in breach of a duty of trust and confidence he owed to his Partner.

37.    In misappropriating material nonpublic information, Tesfaye acted with an intent to deceive or defraud his Partner, since he obtained the information as part of their relationship of trust and confidence, and feigned fidelity to that confidence while making undisclosed, self-servicing use of the information by trading. His misconduct also frustrated fair and honest markets since investors will hesitate to venture their capital in a market where trading based on misappropriated information puts them at an informational disadvantage that stems from deceit.

## FIRST CLAIM FOR RELIEF

### Violation of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]

38.    The SEC realleges and incorporates by reference paragraphs 1 through 37 as though fully set forth herein.

39.    By engaging in the conduct described above, Tesfaye, in connection with the purchase and sale of securities, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange, with scienter:

a.    employed devices, schemes, or artifices to defraud;

b.    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

c.    engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person, including purchasers and sellers and prospective purchasers and sellers of securities.

40.    By engaging in the foregoing conduct, Tesfaye violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violation of Exchange Act Section 14(e) and Rule 14e-3 Thereunder
### [15 U.S.C. § 78n(e) and 17 C.F.R. § 240.14e-3]

41.    The SEC realleges and incorporates by reference paragraphs 1 through 37.

42.    After Asahi Kasei had taken substantial steps to commence a tender offer for Calliditas's stock and ADRs, Tesfaye purchased Calliditas ADR and options while in

9

possession of material information relating to the tender offer that he knew, was reckless in not knowing, or had reason to know was nonpublic, and which Tesfaye knew, was reckless in not knowing, or had reason to know had been acquired, directly or indirectly, from the offering person, Asahi Kasei, via an employee of Subsidiary A, before such information and its source were publicly disclosed.

43.    By engaging in the foregoing conduct, Tesfaye violated, and unless enjoined will again violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## **RELIEF REQUESTED**

**WHEREFORE,** the SEC respectfully requests that this Court enter a final judgment:

## **I.**

In forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Tesfaye from, directly or indirectly, engaging in conduct in violation of Sections 10(b) and 14(e) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 and 14e-3 thereunder [17 CFR §§ 240.10b-5 and 240.14-e3];

## **II.**

Ordering Tesfaye to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received because of the conduct alleged in this Complaint, pursuant to Section 21(d) (3), (5) and (d)(7) of the Exchange Act [15 U.S.C. § 78u(d) (3), (5) and (d)(7)];

## **III.**

Ordering Tesfaye to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

**IV.**

Retaining jurisdiction of this action in accordance with principles of equity and the

Federal Rules of Civil Procedure to implement and carry out the terms of all orders and decrees

that may be entered or to entertain any suitable application or motion for additional relief within

the jurisdiction of this Court; and

**V.**

Granting such other relief as this Court deems appropriate.

Respectfully Submitted,

Dated: August 11, 2026

/s/ Geoffrey E. Gettinger
Keefe M. Bernstein
Texas Bar No. 24006839
United States Securities and Exchange
Commission Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: (817) 900-2607
Facsimile: (817) 978-4927
bernsteink@sec.gov

Geoffrey E. Gettinger
District of Columbia Bar No. 477533
*Pro Hac Vice* Application Pending
United States Securities and Exchange
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
Telephone: (202) 551-4772
gettingerg@sec.gov

COUNSEL FOR PLAINTIFF
U.S. SECURITIES AND EXCHANGE
COMMISSION